### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| CHARLES K. NASH, § | |
| (TDCJ #1276059) § | |
| § | |
| Plaintiff, § | |
| § | CASE NO. H-18-0245 |
| VS. § | |
| § | |
| ROBERT GONDEK, *et al.*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Charles K. Nash (TDCJ #1276059) sued employees of the Texas Department of Criminal Justice under 42 U.S.C. § 1983, alleging that the defendants were deliberately indifferent to his medical needs after he fell and broke his hip. The defendants are Boyce, a registered nurse; Gondek, a licensed vocational nurse; Monk, a physician assistant; and Mott, the Estelle Unit Health Administrator, move for summary judgment, asserting that Nash may not pursue monetary damages against them in their official capacities and that qualified immunity shields them from the claims in their individual capacities. Nash responded to the motion. Based on the pleadings, the motion and response, and the law, the court grants the motion for summary judgment and enters final judgment by separate order. The reasons are set out below.

### I. Background and Procedural History[1]

In his January 2018 complaint, Nash alleged that the defendants and an unnamed on-call physician at the Estelle Unit failed to x-ray him, provide him with pain medication, or provide him with a wheelchair. *See id.* at 4-5. Nash alleged that the unnamed prison officers turned him away

---

[1] The facts are taken from the original complaint, Docket Entry No. 1, the uncontested medical records before the court, and uncontested facts within the parties' brief in support and opposition for summary judgment.

from further medical care and, when he was taken to the Huntsville Memorial Hospital, forced him to walk to the transport vehicle. *See id.* at 5-6. Nash seeks compensatory and punitive damages for pain and suffering and for his future medical expenses. *See id.* at 12.

After initially screening the complaint, the court ordered the Texas Attorney General's Office to provide a *Martinez* report that included medical records on Nash's injuries and treatment. *See* Docket Entry No. 8. The Texas Attorney General's Office advised the court that the unnamed defendants could not be identified and that the office could not represent them in the civil action. *See* Docket Entry No. 28. The named defendants filed this motion for summary judgment, and Nash responded. *See* Docket Entry No. 35.

Nash had suffered a below-knee right leg amputation in 1985 due to an automobile crash. Nash alleged that on August 4, 2017, he fell in the shower while trying to pick up his clothes from the floor while changing. Docket Entry No. 1 at 8; Docket Entry No. 32-2 at 3; Docket Entry No. 32-3 at 33. After falling, Nash told a correctional officer that he was not injured, but soon after he said that he wanted to go to the infirmary. *See id.* The officer took Nash to the infirmary in a wheelchair.

Nash was evaluated by defendant Gondek, who noted that Nash demanded to see a health treatment provider and receive an x-ray immediately. Docket Entry No. 32-3 at 33. Gondek noted that Nash had intermittent, nonradiating, throbbing pain in his right hip, with limited and guarded movement with a limp in his gait. *Id.* at 29, 30. The injury treatment report indicated that Nash had no visible signs of injury and that his skin was not discolored or red. Docket Entry No. 32-2 at 8. Gondek told Nash that there was no provider on duty and offered Nash an ice pack, a pair of crutches (Nash took one), and Tylenol. Docket Entry No. 32-3 at 33. Gondek also instructed Nash to return the following Monday, regardless of how he felt, when a provider would be on duty. *Id.*

Gondek consulted with defendants Boyce and Monk about Nash's injury and treatment. Both later electronically signed the medical records. *See id.* at 31, 33.

Nash alleged that he attempted to return to the infirmary on Monday, August 7, 2017, as instructed, but that a security officer told him to leave since he did not have a pass. Docket Entry No. 1 at 9. A TDCJ investigation into Nash's fall revealed that Gondek had failed to mark on Nash's patient record form that a medical pass was to be issued, despite Gondek's verbal instruction to Nash to return the following Monday. *See* Docket Entry No. 32-2 at 4-5. Nash returned the next day and again complained of pain in his right hip, with decreased range of motion. *See* Docket Entry No. 32-3 at 14, 16. Nash also complained of sharp, constant, nonradiating pain in the right hip. *Id.* at 15. Nash was sent to Huntsville Memorial Hospital for x-rays. *See id.* at 16. The x-rays showed a right femoral neck fracture with no displacement. *Id.* at 22. Nash was transferred to UTMB Galveston that same day. *See id.* at 20.

On August 10, 2017, Nash had surgery on his hip at UTMB Galveston. *See* Docket Entry No. 32-1 at 35. Nash was ordered to have physical therapy and bear weight on his hip as tolerable. *Id.* Nash was discharged from the hospital on August 17, 2017, and transferred to the Jester III Unit for physical therapy. *Id.* at 42, 44. On October 9, 2017, Nash had a follow-up appointment at UTMB Galveston. He stated that his pain had improved with only "mild" irritation with lateral thigh popping. *See* Docket Entry No. 32-4 at 45. The record indicates that this could be caused by IT-band irritation, but that Nash had no problems walking with touch-down weight-bearing restrictions. *Id.* X-ray images showed that the hip fracture healed without complications or displacement. *Id.*

## II.     Standard of Review

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

3

Civ. P. 56. "A court considering a motion for summary judgment must consider all facts and evidence in the light most favorable to the nonmoving party." *Haverda v. Hays Cty.*, 723 F.3d 586, 591 (5th Cir. 2013). "However, to avoid summary judgment, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007). The nonmovant must "make a sufficient showing of an essential element of the case to which [he] has the burden of proof." *Id.* He "must set forth specific facts to establish that there is a genuine issue for trial, but where the evidential submissions lack probative value as to a genuine issue, summary judgment is appropriate." *Id.*

The substantive law determines what facts are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Capital Concepts Props. 85-1 v. Mut. First, Inc.*, 35 F.3d 170, 174 (5th Cir. 1994). "However, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to preclude summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998) (quoting *Anderson*, 477 U.S. at 252) (alteration in original). Rule 56 does not impose a duty on the district court to sift through the record in search of evidence to support the nonmoving party. *See Carr v. Air Line Pilots Ass'n Int'l*, 866 F.3d 597, 601 (5th Cir. 2017). The non-movant must identify specific evidence in the record and precisely articulate how the evidence supports the non-movant's claim. *Id.* Conclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

Qualified immunity protects government officials from civil liability in their individual capacity to the extent that their conduct does not violate clearly established statutory or

constitutional rights. *Trent v. Wade*, 776 F.3d 368, 377 (5th Cir.), reh'g denied, 801 F.3d 494 (2015). "A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof," shifting it to the plaintiff to show that the defense is not available. *Trent*, 776 F.3d at 376 (internal quotation marks omitted); *accord McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).

A plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011). Courts of appeal are free to decide which of the two prongs of the qualified immunity analysis to address first. *Id.*; *see also Camreta v. Greene*, 563 U.S. 692 (2011) ("[I]t remains true that following the two-step sequence—defining constitutional rights and only then conferring immunity—is sometimes beneficial to clarify the legal standards governing public officials."). The second prong is satisfied only if "the state of the law at the time of the incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (internal quotation marks omitted).

## III. Discussion

Boyce, Gondek, Monk, and Mott argue that they are immune from monetary damages in their official capacities and that they are entitled to qualified immunity in their individual capacities. In his response, Nash fails to address the defendants' legal arguments. *See generally* Docket Entry No. 35. Nash instead argues that he is disabled and that the defendants failed to respond to his American with Disabilities Act claim. *Id.*

Putting aside the fact that Nash did not raise this claim in his pleadings, he fails to allege facts or point to evidence that make a prima facie showing under the Act. State officials cannot be sued in their individual capacities under the Americans with Disabilities Act, as a matter of law.

5

"Only public entities are subject to Title II." *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1773 (2015) (citing, *e.g.*, *Pennsylvania Dept. of Corrections v. Yeskey*, 118 S. Ct. 1952, 1954-55 (1998)); *see also Lollar v. Baker*, 196 F.3d 603, 608-09 (5th Cir. 1999). Nash's ADA claims against the existing defendants in their individual capacities must be dismissed.[2]

To the extent that Nash's complaint is liberally construed to assert a claim under the ADA against the TDCJ, through the defendants in their official capacities, he fails to state a claim. Title II of the Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A plaintiff must identify evidence of facts to indicate "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

In his complaint, Nash alleges that the named defendants were deliberately indifferent to his medical needs by failing to x-ray him immediately after he went to the medical infirmary over a weekend. *See generally* Docket Entry No. 1. Nash was examined and found in no acute distress, given crutches and Tylenol, and told to return on Monday, when a health-care provider would be on duty. Nash does not allege that he was denied equal access to prison facilities or that the prison failed to accommodate his disability in the shower area. The allegations he raises for the first time in response to the summary judgment motion are conclusory. He does not discuss specific deficiencies or problems in the Estelle Unit's shower area. *See* Docket Entry No. 35. Nash neither pleads nor identifies evidence of facts that would support a reasonable inference that TDCJ

---

[2] Nash does not state which defendant failed to properly accommodate his disability. *See generally* Docket Entry No. 35. As the claim is dismissed in its entirety, the court will not attempt to discern the proper defendant for this claim.

intentionally discriminated against him on the basis of the disability from his amputated leg. Nash states that he should have had a shower chair, but he fails to discuss how a shower chair would have stopped or prevented his fall. The record indicates that Nash fell while changing his clothes after his shower, not during the shower. *See* Docket Entry No. 1 at 8; Docket Entry No. 32-2 at 3; Docket Entry No. 32-3 at 33. The record of the investigation conducted by TDCJ shows that Nash did not use the benches that were provided for disabled prisoners to change. *See* Docket Entry No. 32-2 at 5. Because Nash failed to assert a disability discrimination claim in his complaint and failed to point to any evidence to support his claim, the court grants summary judgment on the ADA claim. The next issue is the claim of deliberate indifference to Nash's medical needs.

### A. Eleventh Amendment Immunity

A suit against state officers in their official capacities are effectively a suit against the state office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment bars claims for money damages against a state or state agency. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). An action for monetary damages against state officials in their official capacities is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Eleventh Amendment immunity applies to TDCJ officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (the Eleventh Amendment bars a prisoner's suit for money damages against prison officials in their official capacities).

Nash does not indicate in his complaint whether he sues the defendants in their official or individual capacities. Nash appears to seek monetary damages against all of the defendants named in the complaint. Nash does not allege or identify evidence of facts indicating that the defendants acted outside their official duties. To the extent that Nash sues the defendants in their official

7

capacities for monetary damages, those claims are barred by the Eleventh Amendment. Nash's claims for money damages against the individual defendants in their official capacities are dismissed.

### B. Qualified Immunity

To negate qualified immunity, Nash must show the defendant violated his constitutional rights, and that the right was clearly established at the time of the alleged misconduct. *Pearson*, 555 U.S. 223, 232 (2009). The court may consider the steps in either order and grant summary judgment on qualified immunity if Nash fails at either step. *See id.* at 236; *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019).

The Eighth Amendment prohibits "deliberate indifference" to a prisoner's serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 834-47 (1994). A plaintiff must show that the defendant: (1) was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; (2) subjectively "drew the inference" that the risk existed; and (3) disregarded the risk. *Id.* at 837. A prison official cannot be liable unless the official knows of the excessive risk to the inmate's health or safety; an official's failure to act that is "unaccompanied by knowledge of a significant risk of harm" is insufficient for a constitutional violation. *Id.* at 837-38. Nor is it enough to identify a significant risk that the official "should have perceived but did not." *Id.* at 838. A plaintiff must identify evidence that a prison official refused to treat him, ignored medical complaints, intentionally treated him incorrectly, or similar conduct that would clearly indicate a "wanton disregard" of the prisoner's serious medical needs. *See Arenas v. Calhoun*, 922 F.3d 616, 620-21 (5th Cir. 2019). A misdiagnosis, negligence, or medical malpractice are not enough. *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). A plaintiff may not pursue claims based on respondent superior, against a supervisory official who had no personal involvement, absent the supervisor implementing a policy so deficient that the policy itself violated the prisoner's rights

and was the "moving force" of the constitutional violation. *See Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).

### 1. The Claims Against Mott[3]

Nash claimed that Mott, the health administer for the Estelle Unit, was deliberately indifferent to Nash's serious medical needs by failing to implement adequate weekend or after-hours health-care. *See* Docket Entry No. 1 at 4. Nash did not allege that Mott had any knowledge of, or participation in, his medical care, including in August 2017. *See generally id.*

Apart from conclusory allegations that Mott failed to implement "proper" policies, Nash did not allege what the policies are or how the policies violated his constitutional rights. The policies in the record provide procedures for determining whether an injury is severe enough to have the prisoner promptly taken to an emergency room for treatment when a medical provider is unavailable at the prison unit. *See* Docket Entry No. 32-1 at 66-67, 73. As discussed more fully below, at Nash's initial infirmary visit, he did not present with symptoms of a fractured hip. Based on the policies and Nash's medical condition at the time, the defendants who evaluated him made a medical judgment that Nash's injuries were not severe enough to send him to an emergency room at that time. And, as discussed more fully below, the several-day delay in sending Nash for x-rays was not deliberate indifference to Nash's medical needs, but a medical judgment based on available information. Nash's claims against Mott are denied with prejudice.

### 2. The Claims Against Gondek, Boyce, and Monk

Nash alleged that Gondek, Boyce, and Monk were deliberately indifferent to his serious medical needs because they failed to provide him medication, a wheelchair, and a medical pass, and delayed x-rays.

---

[3] Nash sues an "unnamed health administrator of the Estelle Unit." Mott is the health administrator for the Estelle Unit, and is substituted as the proper party.

9

Nash came to the infirmary after his fall complaining of throbbing, intermittent, non-radiating pain in his right hip. Nash did not have a visible injury, and there was no skin redness or discoloration. Following the policies in place, Gondek informed Nash that no provider was on duty and that he would have to return on Monday if he wanted x-rays. The medical records reflect that Gondek informed Nash to return regardless of how he felt, and that Nash affirmed his understanding of these instructions. Gondek provided Nash with an ice pack, Tylenol, and crutches.[4] When Nash returned to the infirmary on Tuesday, August 8, 2017, he complained of sharp, constant, nonradiating pain in the right hip. Nash was transferred to Huntsville Memorial Hospital, where x-rays showed that Nash had a right femoral neck fracture with no displacement. Nash had successful surgery a few days later, on August 10, 2017.

Failing to immediately diagnose Nash's hip fracture or issue a medical pass for Nash to return to the infirmary on Monday may have been negligent. But negligence is not deliberate indifference to serious medical needs. A serious medical need is one for which the need of prompt treatment is so apparent that even laymen would recognize that care is required. *See Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018). Nash's symptoms on August 4, 2017, did not indicate a hip fracture. Instead, the record showed that Gondek provided Nash with appropriate care based on his symptoms, and that Boyce and Monk agreed with the level of care provided. Nor does Nash show that the several-day delay in the x-rays caused him substantial harm. A clerical error such as not checking the box to issue a medical pass for the following Monday is not deliberate indifference. *See Murphy v. Woods*, No. 93-2802, 1994 U.S. App. LEXIS 43148, 5* (5th Cir. May 2, 1994) (unpublished) (citing *Morgan v. Fancher*, No. 92-7326, 1993 U.S. App. LEXIS 41076 (5th Cir. June 22, 1993) (unpublished), holding that an administrative error causing a harm or

---

[4]The medical records indicate that Gondek offered Nash two crutches, but Nash accepted only one crutch. *See* Docket Entry No. 32-3 at 33.

violation of a prisoner's rights fails to establish deliberate indifference). When Nash returned to the infirmary with increased pain, he was promptly sent for x-rays and had surgery as a result. Nash was appropriately treated and successfully healed from the surgery. Nash does not identify a basis to infer that Gondek, Boyce, or Monk knew and disregarded a risk to Nash's health. The claims against Boyce, Gondek, and Monk are dismissed.

### 3. The Claims Against the Unnamed Defendants

Nash alleged that an unnamed physician at the Estelle Unit on-call for the weekend of August 4 to August 7, 2017, was deliberately indifferent to his medical needs by refusing to x-ray him and failing to provide him with pain medication, a wheelchair, and a medical pass for August 7. Nash also alleged that two unnamed correctional officers were deliberately indifferent to his medical needs by refusing to allow him to enter the medical infirmary on Monday, August 7, 2017, because he did not have a pass, and by threatening to file a disciplinary case against him if he did not leave. *See* Docket Entry No. 1 at 5. Finally, Nash alleged that two unnamed correctional officers were deliberately indifferent to his medical needs by forcing him to use his crutch instead of providing a wheelchair to get from the infirmary to the transport vehicle to go to Huntsville Memorial Hospital. *See id.* at 5-6.

The court ordered a *Martinez* report, which Nash received on June 22, 2018, that included medical and other records relating to his claims. Nash did not amend his complaint to provide the names of any on-call physician or correctional officers that he believed violated his constitutional rights. The Texas Attorney General's Office accepted service and advised the court and Nash that it could not identify the unnamed defendants. Nash failed to provide further identifying information that could help identify and serve these defendants. The complaint is dismissed against the unnamed defendants for failure to prosecute the claims against them.

Even if they had been properly identified, Nash did not show that the defendants were deliberately indifferent to his medical needs. First, there was no evidence that any of them were subjectively aware that Nash had fractured his hip. Nash did not identify facts that the unnamed officers knew that having Nash walk with the crutch, as opposed to being transported by wheelchair, would present an excessive risk to Nash's health. The medical records show that he was able to walk. The TDCJ investigation report indicates that the correctional officer staff was not told of Nash's injury or the reason for taking him to Huntsville Memorial Hospital. *See* Docket Entry No. 32-2 at 5. Nash has not shown that the transport staff or the staff assigned to the medical infirmary knew and were deliberate indifferent to Nash's serious medical needs. The claims are dismissed.

**IV.    Conclusion**

Defendants' motion for summary judgment, (Docket Entry No. 32), is granted. This action is dismissed with prejudice. Nash's motion for a temporary restraining order and preliminary injunction, (Docket Entry No. 41), is denied. Final judgment is separately entered.

SIGNED on March 3, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge